This is 1220321 Medici Gallery and Coffee Shop versus Pioneer. I won't go through all those other names. Before you, you have Judge David Ellis and myself, Justice James Fitzgerald Smith. Justice House is, for some reason, we haven't reached him. He'll listen to this since it is being tape recorded. And with that, the appellant may proceed. Oh, I didn't give you our time. 15 minutes. We don't interrupt you when you're arguing. We ask questions after. So that'll be the procedure. Will there be time for rebuttal, Your Honor? Oh, yeah. So it's 15 and maybe five. Just guard yourself as the appellant. Be very careful because you kind of shotgun this. You got about eight or nine arguments, and you're definitely not going to be able to get all of those in. So I'd be choosy that you pick the most important ones and aim on them. With that, you may go ahead. Thank you, Your Honor. Good morning, and may it please the Court. My name is Stan Kitzinger. I'm counsel on behalf of the appellant, Medici Gallery and Coffeehouse. To your suggestion, Judge, there are three main points I'll address this morning. First, that summary judgment was, and ultimately judgment at trial, should have been entered in favor of Medici as a matter of law, as it was impossible to determine the water charges imposed or incurred in connection with the demise premises. Second, the Pioneer UCV was not entitled to a judgment for fees and a 10% penalty because it never provided the written notice of the amount due or of default required under the lease to allow for the assessment of that penalty in attorney's fees. And third, the award of attorney's fees was improper, as it included charges to other clients, failed to specify the work that was performed, and was not proportional to the amount at issue. Now, as this Court's aware, this matter started as a claim by Medici against Pioneer Acquisitions to reform a lease to reflect the actual intent of the parties who originally entered into that lease. Ultimately, the circuit court denied that relief, finding that the lease agreement must be enforced as written. While we disagree with that ruling, it's not part of our appeal today. In response to Medici's complaint, a different party, not Pioneer Acquisitions, but Pioneer UCV, appeared in the case and then asserted a counterclaim against Medici for failing to pay the water charges incurred in connection with the demise premises. As an initial better appellee would have this Court treat both Pioneer Acquisitions and Pioneer UCV as one single entity. In reality, there are two distinct LLCs and a distinction with a difference, as explained in our reply brief. In the original lease at issue, the University of Chicago rented approximately half of one building to Medici and the other half of the Medici was defined specifically in Section 1 of the lease as, quote, the demised premises, close quote. Section 7.1 of that lease provided that in addition to the base rent, Medici was to pay for all water charges imposed or incurred in connection with the demised premises. Between 2001, when the lease commenced, and 2017, the landlord, be it University of Chicago or one of these Pioneer entities, never billed Medici for any of the water charges incurred in connection with those demised premises. Eileen Reisner, who signed the original lease on behalf of the University of Chicago and was called as a witness in the trial by Pioneer UCV, excuse me, explained on pages 226 and 227 of the reported proceedings that in order to pass on the water charges to Medici, the University of Chicago would have to know how much water was actually used in the demised premises. In other words, that defined term specifying the specific space leased to Medici. The problem with this is that until June 19th of 2019, it's impossible to know how much water was used in the demised premises because one water meter serviced the Medici and Noodles. It wasn't until June of 2019 that separate sub-meters were installed that allowed to actually determine which entity, which side of the building was using what water. Mr. Lemberg, who I think has joined us and testified, he's the principal of both Pioneer entities, he testified at trial repeatedly that because there was only a single to the building housing both Noodles and Medici, there was no way to determine how much water was actually being used in the demised premises. That can be found in the reported proceedings on pages 163, 247, and 271. Now, in response to Medici's claim for reformation, Pioneer UCV took the position that the lease should not be reformed and that it must be applied explicitly as written. In fact, Mr. Lemberg testified on pages 282 and 283 of the reported proceedings that the entire lease, every part of it, must be enforced as written and ultimately the circuit court agreed when it ruled against Medici on that reformation claim. Now, in connection with the counterclaim, Medici was entitled to summary judgment on that counterclaim. As I said, the lease as written provided that Medici was to pay the water charges incurred in connection with the demised premises. Every single witness who testified at the trial and provided testimony that was used and all the evidence used at the motion for summary judgment agreed that until the submitters were installed in June of 2019, there was simply no way to determine the water charges incurred in connection specifically with the demised premises. If you look at the motion for summary judgment, the evidence presented there included Mr. Lemberg's testimony, this can be found on page 548 of the record, where he admitted under oath that there's no way to determine the water charges incurred in connection with these demised premises. Now, despite this, Pioneer has claimed or did claim that it should be unilaterally permitted to modify the lease and assert a new term that the water charges can be imposed based on the percentage of the building leased to each of the parties. Now, Pioneer UCV asserted at different points that this was an industry standard. However, when asked about this, this again could be found on page 549 of the record, Mr. Lemberg testified that he was unable to identify any actual industry standard and this was simply his opinion that you could, even though the lease says charges incurred, water charges incurred with the demised premises, that you could just divide, that doesn't really mean what it says and you could just use a pro rata allocation because that's what he thought would be appropriate. Now, that reasoning is both illogical and improper. First of all, water usage is unrelated to percentage of occupancy. As I pointed out, I think both at the trial level and in one of our tenants is a noodle shop that's using a lot of water and the other shop is a cactus store. It wouldn't be fair to say the cactus store would use water on a percentage basis as opposed to its actual usage. Second, if the landlord, when it drafted the lease, wanted to determine water charges in a pro rata basis, it could have done so, but it did not. When the University of Chicago drafted the lease, for example, it provided that taxes would be paid and assessed to the tenants on a pro rata basis based on their occupancy. If the landlord, when it wrote the lease, wanted to charge Medici on the same basis, this pro rata basis for water as it did for the taxes, it could have included that term in the lease, but it didn't. It specifically included a term in the lease that said Medici was to pay the water charges actually incurred in connection with the demise premises. But ultimately, Pioneer can't have it both ways. If the lease is to be enforced as written, the entire lease should be enforced as written. And because Pioneer can't determine the amount of water charges incurred by Medici in the demise premises, the circuit court erred in denying the motion for summary judgment and ultimately entering judgment after trial. That judgment should be vacated as unsupported by the contract of the law. The second argument is that even if this court affirms the judgment for the water charges, it should reverse the decision for the penalty and fees as the circuit court erred in entering that judgment. Pioneer UCV relied on section 10 of the lease to assert its claim for attorney's fees in this 10% penalty. Now section 10 of the lease is entitled default. The last section, but the last paragraph of section 10.1 provides that if the tenant is delinquent, a delinquency charge not to exceed 10% may be assessed along with reasonable attorney's fees if the delinquencies are referred for collection. So the question to the court is, what does it then mean to be delinquent under the lease? Now section 10.1A provides that a tenant will be a default if the tenant fails to pay any rent or other monies agreed by it to be promptly when and as the same shall become due and payable, which failure shall continue for five days after the due date. Section 10.1D provides that if the tenant fails to perform any agreement under the lease and continues to refuse to perform for a period of more than 30 days after notice in writing from the landlord to the tenant, then the tenant is in default. So the question is, how then was Medici delinquent? Under 10.1A, the water charges can't be due until such time as they are determined by the landlord and then communicated to Medici. In other words, until the landlord issues the invoice for the water charges, there can be no due date to pay those charges. The parties are all in agreement and the court, the cert court agreed that no invoice or other document was ever issued by the landlord to Medici demanding payment of any water charges. Under Section 10.1D, written notice must be given of the failure to the tenant to perform under the lease and then the tenant has 30 days secure. Again, no notice was ever given. So whether you look at this under 10.1A, which deals specifically with money or 10.1D, which deals with generally obligations of the tenant to perform its duties and covenants under the lease, no notice was ever given of any kind. This failure to issue the invoice or provide any written notice or demand to pay the water charges was noted by the cert court in its ruling on page 367 of the report of proceedings. It's inappropriate to find that Medici was delinquent in paying water charges for which demand was made, no invoice set, and no opportunity to pay was ever given. Now, recognizing this problem, this deficiency, the cert court found that the filing of the counterclaim served as notice. The notice is required under the lease. The problem with this is twofold. First, the counterclaimant, Pioneer UCV, admitted that the amount claimed in the counterclaim was incorrect, that the bills that they attached to the counterclaim were issued one to Pioneer Acquisitions and not Pioneer UCV, a different party, and that the bills were for water charges associated with an entirely different property, not the Noodles property, not the Medici property, but a different neighboring property. Second, Pioneer UCV's rights were fixed at the time it filed the counterclaim. So even if the court were to assume that the filing of the counterclaim was this written notice to pay the water charges, under 10.1a Medici had at least five days to pay after whatever the due date was, but it had to obviously be at least five days after the notice was given, and under 10.1 at least 30 days before it become delinquent or in default under the lease. At the time the counterclaim was filed, it was impossible for Medici to have been delinquent because the time for it to have paid, even if the notice was proper, the time for it to have paid had not yet expired. If that time hadn't expired, then it can't be delinquent. In the absence of any delinquency, the penalty and the attorney's fees aren't permitted under the lease. Now the court recognized that this counterclaim is defective on its face, and at the request of Pioneer UCV, granted them leave to amend their counterclaim with the actual bills for the whole property in which the demise premises occupied less than 50%. Now Pioneer UCV never complied with this order and never amended its counterclaim despite being told to do repeatedly. So to this date therefore, Pioneer UCV has yet to provide proper written notice that the water charges for the notice. Medici cannot be delinquent in its payment, and Pioneer UCV is not entitled to its judgment for the 10% penalty and the attorney's fees. Just a general rule, it's contrary to terms both of the lease and common sense to charge someone a penalty and attorney's fees for not paying a bill that was never issued. That simply is inappropriate and not supported by law, and the circuit court erred when it did so. Now Medici's third argument is that the circuit court erred in determining the amount of the fees to be awarded to Pioneer. First of all, Pioneer UCV never established it had any interest in the lease, which actually goes to its overall right to recover in general. They never... How can you say that when you're in your that they own the property? We did not, your honor. It's right there. I read it. What happened, Judge? The original complaint was against Pioneer Acquisitions. I know, but that's irrelevant. Okay, you're moneying the water by playing the two together. Stick to one issue and hone in on it. Don't go veering off in the woods. That's fine, Judge. In any event, court abused its discretion in awarding fees for work that was performed not on behalf of the plaintiff or the counterclaimant, Pioneer UCV, but work performed for the other parties. The same attorney, Ms. Moskowitz, represented... Did they not amend and remove those? No, they did not. That's the problem. No, they did. They deleted them, the charges. I think they deleted two charges, but if you read through the entire petition, they didn't delete those. There's lots of work performed for the other parties or work performed on behalf of all of the parties for which all of them were responsible for paying, not just Pioneer UCV, but Jacobat and Noodles, three parties. They removed all the charges on Jacobat and Noodles. Any billing they made is to them for attorney's fees. Your Honor, the work that was performed... The bill as submitted... Ms. Moskowitz agreed to remove some of the charges, but not other charges related to the other parties. They also didn't remove any of the charges for the vague entries that have no basis. We don't even know what work was done. But you didn't go in and specify any of those? We did, Your Honor. If you look at the bill, the response to the petition for fees, we've identified which ones... I forgot the color coding, which ones are so impermissibly vague that you can't tell what the fees were for, what work was done, who the work was done for, or why it was done, or how it related to this action. The other problem is the contract under which they seek fees is limited to the collection cost or enforcing the cost of collection or to enforce a provision of the lease. Many of the charges that have nothing to do with that. They relate to positions taken in connection with the Medici's claim. There's not a prevailing party... In other words, the fee-shifting provision doesn't provide for a prevailing party to recover their fees. It's specific to the... The landlord may recover fees incurred in connection with collection or to enforce a claim. Many of those fees have nothing to do with the collection action. They have to do with the other part of the claims related to, one, Jacopat and Noodle's claim for breach of contract after the fact that was ultimately non-suited. They have to do with claims, defending the claims from Medici in bringing the action for reformation. The problem is that the court... If you read her ruling on this, didn't undertake any actual analysis of the fee petition. She simply rubber-stamped it and entered judgment for the amount that was requested, even though none of these issues were even addressed, much less distinguished in any way. If the court doesn't have any more questions, I will reserve the remainder of my time for rebuttal. Could I ask a couple of questions? Good morning, Mr. Kissinger. So just stepping back for a second, the contract, I think it was section 7.1, it literally says that your client is on the hook for water charges, right? It does say that. Incurred in connection with the demise premises. Yes, it does. Yeah, yeah. And so you bring this claim for reformation, which in essence is saying, we know it says that, but that's not what the parties really meant, as is evidenced by how the University of Chicago treated the contract for many years. That's correct, your honor. Yeah. Okay. So your interpretation of that provision, because there's a single meter, is that you would never owe a dime because it can't be separated out. That's your position? Well, the initial position was that through the course of conduct, that provision, which is sort of a provision in their standard lease, which Ms. Risen testified to, was never intended to be in there. We acknowledge that the court disagreed. We sought reformation to exclude that entire provision. The court disagreed. We're not appealing that. Our point now is that if that provision applies, then it needs to apply as written, which is what Pioneer and UCV was arguing all along, if you have to apply the lease as written. As written, it says the only charges that can be charged are those incurred in connection with the demise premises. Now, for 16 years, the University of Chicago never made those charges because they couldn't, and they knew they couldn't. So they agreed with that position, and Ms. Risen testified to that, that because they couldn't tell what the charges were, what the water usage was for the demise premises, they never made a charge. Now, once they put the meters in, I would agree that they'd be entitled to charge for the actual water usage to the demise premises. They just chose not to put the water meters in for 18 years. Yeah, but your interpretation of the contract as written under the circumstances before we had the individual meters was you don't owe anything. That's got to be what you, the answer's got to be yes, right? Correct. And that's your argument at trial, that they can't prove damages because they can't segregate the two. Correct, which is required under the lease. But does that strike you as a reasonable interpretation? Doesn't that render the language superfluous to read the contract that way? No, because they had the option, the University of Chicago had the option, which was ultimately exercised, to put in a second meter and make those charges. So in other words, if the university chose not to, and if you read some of the minutiae, what ended up happening is that the amount charged on a square footage basis to Medici was higher than that to Noodles for the exact same building. So our argument was that the University of Chicago, recognizing that they couldn't recover the water charges because of the one meter, they just increased the base rent and recovered it that way. Okay. Was, is the question of how to calculate damages in this case, a question of law or a question of fact? It's a question of law, your honor. It's the contract governs. So you literally have to plug in the numbers from the contract. You can't, it's not. Well, so the pioneer comes in with testimony from Mr. Lemberg, I think is how you pronounce it. And he says, there's an industry standard. I know you take issue with it. I understand you don't think that actually was ultimately what he was saying that he didn't actually speak to an industry standard, but that was their testimony, right? That's how they avoided summary judgment. And that was their testimony at trial, that there is a standard where if you've got two people sharing a meter, you allocate it based on square footage. Correct. So Mr. Lemberg's testimony was that, and this is on, we found on page 548 of the record, he was asked the question. So the other question is, where do you find that industry standard? Where do I look? The answer is experience. I can't point to any particular document. Possibly there's one out there, but I don't know. So it's really your experience. Yes. So it's Mr. Lemberg, who is the plaintiff in this case saying, well, I think this is the right answer. And this is what I want to do. He can't identify any standard or anything other than what he personally believes. I understand your position, but that still sounds like a factual question to me. The trial judge accepted his testimony, did she not? I mean, she ruled, she awarded the amounts. The problem, Judge, is that the contract is what governs. And the contract says, here's how you assess, here's how you come up with these charges. You're only charged for the water that's used in your section of the building. And if they don't, if the landlord chooses not to make that assessment or chooses not to charge it for whatever reason, then that's up to the landlord. But the landlord can include language in at least a day draft and then say, it doesn't mean what it says. It means whatever we think it means. And therefore we should be entitled to collect this or things like that. Perhaps that would be different, but they're claiming the claim is for breach of contract and the contract is what governs. And the contract doesn't permit them to just make up a number based on percentages. They could have done that. They chose not to. Okay. Let me ask you briefly. I won't take too much longer, but when you talk about getting notice, there's a couple of things that jump out at me about your notice argument. One is that, I mean, didn't you acknowledge in the complaint from the get-go that they were demanding that you pay water charges and that's what prompted you to bring the reformation lawsuit? There's a discussion in the report of proceedings. I believe it's 333 to 336 where we talked about this, where there was a generic demand saying basically, hey, you owe us for water now. We didn't realize this, but you owe us for water. That's different than you owe us. Here's our demand. Here's our invoice. You owe us $719.26 for water. So simply saying you owe us for water. Okay. How much do I pay? When does it do? They have a billing system where they send an invoice for the taxes. They say, for example, the taxes are paid in arrears. They go, here's the taxes as a reconciliation. They send an invoice. It gets paid. All we admitted, and it's quite clear, it's discussed at length in that section of the report of the proceedings, demand was made in the very generic sense, but never, no invoice was sent, nothing specific, no amounts identified. And this is recognized also by the court on page 367 of the report of proceeding where the court ruled that she acknowledged there was never an actual invoice or written demand set for a specific amount. And the problem with the court's finding that the counterclaim served as that notice is that the counterclaim was for the wrong amount at the wrong property to the wrong party. So it also didn't serve as the proper notice, which is why the court ordered them to fix that, which they never did. Okay. Thank you, counsel. Okay. Ms. Moskowitz, you may proceed. Thank you. Good morning. Jean Moskowitz on behalf of Pioneer UCV LLC. And I'm just going to refer to that entity as Pioneer. Counsel originally stated that there's two entities, Pioneer UCV and Pioneer Acquisitions, and he was going to refer to both of them as Pioneer. When this lawsuit was filed by Medici in October of 2017, it was filed against Pioneer Acquisitions. I filed an appearance on behalf of Pioneer UCV LLC. No appearance was ever filed on behalf of Pioneer Acquisitions. When the answer to Medici's complaint was filed, it specifically said that it's being answered by Pioneer UCV LLC improperly named as Pioneer Acquisitions. And in addition to filing an answer, Pioneer UCV filed a counterclaim. The original lawsuit filed by Medici was filed, as I said, in October of 2017. That was one month after the demand to pay water charges was made by Pioneer upon Medici. So it was clear from the get-go that Medici was not going to pay any water charges. And when they got the demand to pay water charges, they were not going to pay any water charges. They were not going to pay any water charges. So when Medici acknowledges that there was a demand made on it in September of 2017 to pay for past and future water, that is, in effect, the notice. Counsel's argument on appeal has to do with, well, I guess he didn't argue about not having or the issue with respect to no additional discovery regarding the ownership of the property. And ownership of this property has never been a dispute. In one of the paragraphs of Medici's complaint, Medici acknowledged that Pioneer is, in fact, the successor landlord to the University of Chicago. And furthermore, when Medici filed its motion for summary judgment, it included in its statement of uncontested facts that on or about October of 2016, Pioneer purchased the building, including the property from the University of Chicago. And thereafter, in December of 2018, it sold the property to Jacobet. Counsel argued briefly with respect to Pioneer's claim for attorney's fees that it and that's ridiculous because when Pioneer answered, it also filed an affirmative defense. And it specifically stated that in thereupon became the successor landlord, and that in October of 2016, Medici executed a tenant to stop a letter. There was never any reply to this affirmative defense. So therefore, it's deemed admitted. And furthermore, when Medici answered Pioneer's counterclaim, and the counterclaim specifically said that it was Pioneer UCV that made demand on it to pay water and sewer charges, which it refused to pay, Medici admitted that. With respect to Medici's motion for summary judgment, the trial court properly denied it and followed the law. Pioneer has shown the existence of damages, the existence of damages, the issue with respect to computation of those damages is up to the trier effect. And that's why the trial court denied Medici's motion for summary judgment, because Pioneer presented a reasonable basis for the industry standard. And when Mr. Lemberg testified at trial with respect to the industry standard, that testimony went unrebutted. And it was unrebutted evidence of the industry standard to allocate water usage based on the proportionate share. Council may want to using no water, that would have made a difference. But those are not the facts. The facts are this building was almost 50. Half of it or approximately half of it was occupied by Medici. And the other approximate half was up was occupied by noodles, which is a restaurant. So Mr. Lemberg at trial also indicated that it's reasonable after the sub meter was installed in the summer of 2019. One could determine what Medici's actual water usage was, and Mr. Lemberg testified that one could then extrapolate the water usage from the prior period, based on the water usage that was in fact used after the sub meter was installed. So the only thing that's not in dispute is that water was in fact used by Medici. And it's up to the trier fact to determine the amount of damages to award based upon a reasonable basis, which is what the is only with respect to the denial of the motion for summary judgment. The appellate brief filed by Medici has nothing to do with whether the trial court was incorrect at trial, when it determined what the amount of those damages were. Council indicated that and he's correct, that there was no formal amended pleading filed to conform to the proofs. And council articulated that the invoices or the bills attached to pioneers counterclaim what were in fact addressed to pioneer acquisitions, which doesn't mean very much because they can be addressed to whomever the city of Chicago has on its records. The point is, those specific invoices were never referenced in pioneers counterclaim, nor were they used at trial. The appellant has the duty to provide the court with the complete record and the exhibits were not included. But when one reads the report of proceedings, it's clear that the bills which were attached to the counterclaim had to do with an account number 596, not the account number for the Medici property, which is account number 597. And during the course of trial, it was testified to that not only does Medici operate this bakery in the subject premises, but it also in fact, owns a property right next door to that. So there was a mix up with who was getting which water bills, but I won't belabor that fact. The point is, it was those bills, which were identified in pioneers exhibits five through eight, which were admitted into evidence, it was those bills which supported pioneers claim for damages. And it was those bills which were relied on by the trial court when it when it awarded damages to pioneer. So the damage award were supported by the evidence. And the mere fact that pioneer never formally filed an amended pleading attaching those exhibits doesn't negate the trial courts ruling and finding on the issue of liability and damages against Medici. With respect to counsel's last argument, I believe it was. Give me one second here. Oh, back to with respect to the water charges. Council indicated when questioned about when the the person from the University of Chicago, Ms. Reisner testified, she didn't testify that there was no way to compute the water charges. She in fact testified that it was a mistake by the University of Chicago not to have charged Medici for the Chicago was the landlord. But back to the last issue raised by Medici with respect to attorney's fees. In fact, pioneer always had a claim for attorney's fees from the inception when it filed its counterclaim against Medici. And Medici never raised any issue with respect to standing until after the trial of this case when it was responding to pioneers fee petition. The issue of standing should have been raised as an affirmative defense. It was not so it's waived. The lease in paragraph 10.1 provides that collection costs and reasonable attorney's fees shall also be paid if delinquencies are referred for collection, or enforcement of any provision of this lease. Pioneer was the party being sued, and it was enforcing its right to collect for water charges when it had to defend Medici's reformation claim. The court found that the delinquency charge was February 23, 2018, which is the date when Medici filed its answer to pioneers counterclaim. With respect to the reasonableness of the attorney's fees, the court did not abuse its discretion when it awarded the attorney's fees being sought. The trial court discussed in detail all factors it considered. It considered Medici's vagueness and proportionality arguments and found the fees being sought by Pioneer to be reasonable based largely upon the unrebutted affidavit attached to Pioneer's fee petition. Council made reference to some color coding that was included in the response to the fee petition, but there's no counter-affidavit to rebut the affidavit that was attached to Pioneer's fee petition. And when questioned, in fact, Pioneer reduced or redacted and took out some of the fees that it had originally been charging, which fees were related to representing jacopat and noodles. So at this point, Pioneer requests that the appeal or that the judgment of the trial court be affirmed and also that this case be remanded so that Pioneer can file its petition for fees that were incurred to defend this appeal. Thank you. Dave, you got any questions? Maybe just a couple. Thank you, Justice Smith. Ms. Moskowitz, so one of the arguments is a pure contractual argument that the language of the contract says that you can charge Medici for water charges actually incurred. So why is that not a question of law right there as opposed to a question of fact as to what that means? So the lease says that Medici's responsible for water charges incurred or imposed on the property, and in fact there were charges incurred and imposed. We just don't know what the discrete number was during that period of time. But in fact, there was water charges. In fact, Medici used water. So the idea of the existence of damages, i.e. that water, that they used water and they didn't pay for it, is a given. The question is, what is the computation of those damages? What's the amount of those water charges? And with respect to the summary judgment motion, it was as long as those charges can be reasonably determined, and they were reasonably determined by the testimony with respect to industry standard at trial, then a trier of fact found reasonable charges to be those which were sought at trial. Based on the exhibits that were admitted into evidence, Exhibits 5 through 8, which due to appellants' neglect, were not part of the record on appeal. So what is your response to your opposing counsel's statement that Mr. Lemberg sort of walked back his testimony a bit and did not did not really purport to be citing an industry standard so much as his own experience? How do you respond to that? Well, so to begin with, that has to do with what took place at trial. The reasonableness of the charges, which the evidence showed at trial, and that was not part of this appeal. What was part of this appeal was... I understand. The summary judgment denial, right? That's correct. And you're arguing that is not justiciable right now? I'm sorry, I didn't hear you. And your position is that's unreviewable, right? Correct. Yeah, okay. But let's put that aside. Can you answer my question? What is your response to the statement that Mr. Lemberg, in fact, was not purporting to cite an industry standard? He cited, and I don't have it at my fingertips, that he's been in the real estate business for X amount of years. He's handled lots of these types of lease transactions, and it was his experience in the industry that this is how charges are allocated when there's only one bill for multiple tenants. Okay. Yeah, that's what I... Okay. All right. Thank you. Okay, Stan, do your finale. Thank you, Justice. A few quick things. With regard to the calculation of damages on a breach of contract claim, this happens all the time where a party can show that they're entitled to some damages, but can't prove up their damages in accordance with the contract. The law in Illinois is then the party is only entitled to nominal damages, not to be able to create some new methodology of determining what those but under the terms of the contract and under the... For breach of contract, it's the obligation of the counterclaimant to prove those damages, and they simply can't, which entitles them only to nominal damages then, not some other amount that they can fabricate. With regard to... Counsel, that's not really a contractual argument then. It sounds like... It doesn't sound like Pioneer is disputing the fact that the contract says what it says, actually incurred or imposed on the property, but they're saying it's how you prove it. And they're saying as a factual matter, we put forth evidence that a trier of fact could accept the testimony of Mr. Lemberg to establish that number. And you're just saying that that number should not have been accepted. Well, the problem is, Judge, the law essentially that governs this case, this transaction is the contract that they wrote. And the contract says, you can recover charges incurred or imposed on the demise premises. Those which Mr. Reiser acknowledged was what they actually used on Medici, not at the whole building based on some other formula that we can come up with. So it's their contract, they have to prove their damages. And the contract itself doesn't provide for alternate forms of for what you actually use. And they didn't do that. And if they can't prove their damages, which is their obligation, then all they're entitled to is nominal damages and not some other formulation, which they came up with. Okay. But you're not appealing the judgment in that regard, are you? You're not saying the court erred in its calculation of damages. You're saying the court should have granted summary judgment. I mean, the notice of appeal is for all of the orders, including the orders after trial, asking that they all be vacant as improper. I will acknowledge that the thrust of the brief was directed towards the summary judgment should have been granted. But the notice of appeal and the appeal is for the judgment order after trial. So it applies just as much saying they still have an obligation to prove up their damages at the trial, which it's our position they can't do. And we're going to best entitle them to nominal damages. With regard to the attorney's fees, again, what does the contract say? It says you have to give notice. And they're saying, well, the notice is what we gave as general demand. Well, I would ask, how much was Medici to pay when they said, hey, you owe us for water? Okay. Well, what does that mean? It's not, you know, Medici could not comply with an amorphous statement of you owe us for water, but we're not going to tell you how much. Well, how much does Medici pay? When does the clock start running? When do they have notice? When are they in default? No one knows. That's why the court, the circuit court said, recognizing that, said, well, we'll count the counterclaim as the notice. But the problem with the counterclaim is it's for the wrong amount, for the wrong property, to the wrong party. So that can't be proper. I mean, notice, to get notice of something implies proper notice. And I can't send someone a bill for something, you know, for work that wasn't performed for that party at a different address and say, well, you owe me this amount. Oh, that's not the right amount. It's not the right place. It's not for the right stuff. Well, now you're in default, and I'm going to sue you for the not what the contract permits. And that's kind of an absurd result to penalize a party for not paying an amount they were never asked to pay, which is why they were specifically told, file the amended complaint. Had they filed the amended complaint, attached the correct bills, then we could have filed an affirmative defense that said, hey, this isn't a proper notice. You don't have standing because you didn't give us notice and a time to cure and a time to pay. Those are all things that were caused because Pioneer UCV didn't comply with the circuit court's orders trying to correct the problem for them. They didn't do it. So, you know, Ms. Moskowitz talked earlier about, you know, notice was given in 2017. I think it was October of 2017. Notice of what? I mean, we can scour the record. There is simply no invoice, no bill, no passed on water charges, nothing, no letters, no correspondence. There's nothing that could support that claim. And it's only with that notice and an opportunity to then pay within the time prescribed by the lease, either five days for 10.1A or 30 days on 10.1D, that Medici could be delinquent and in default. And then and only then would attorney's fees under that 10% penalty be appropriate. Council made an issue of the bills that were, you know, the court doesn't have the bills that were submitted at trial. That's not our argument. We're not disputing that bills were ultimately entered in that the court, what the circuit court did was take this percentage of this pro rata basis of those bills. Our whole point is you just can't do that. That's not permitted under the terms of the lease. Because if the court doesn't have any more questions for me, I would just ask that the relief requested in our briefs be granted that the judgment be vacated and pulled apart and the judgment be entered in favor of Medici on the counterclaim. Okay, no further questions. No further questions. Thank you very much, guys. And Nate will get his opportunity to listen to all of this. We thought maybe he would have showed up during since he's never missed anything before, but I'm sure he has a good reason. So both, thank you very much. You both argued your key issues very interestingly, and very affirmatively. So you guys are good advocates for your sides. Thank you very much.